IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DINA DINATALE, | ) | **08 C 1253** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No: |
| | ) | |
| STOCK BUILDING SUPPLY, LLC | ) | Judge: |
| | ) | **JUDGE CASTILLO** |
| Defendant. | ) | **MAGISTRATE JUDGE NOLAN** |
| | ) | <u>Jury Trial Demanded</u> |

# COMPLAINT

NOW COMES the Plaintiff, DINA DINATALE, ("Plaintiff" and/or "DiNatale") by and through her undersigned counsel of record, and complaining against Defendant STOCK BUILDING SUPPLY, LLC (hereinafter referred to as "Defendant" or "Stock"), and in doing so states as follows:

## NATURE OF CASE

1. Plaintiff, Dina DiNatale, brings this four (4) Count Complaint against Defendant Stock Building Supply seeking damages for Defendant's egregious disability discrimination, failure to accommodate, harassment, unlawful termination, hostile work environment and other related unlawful conduct constituting violations of the Americans with Disabilities Act of 1990, §2 *et. seq.*, 42 U.S.C.A. §12101, *et. seq.* ("ADA"), and the Intentional Infliction of Emotional Distress.

2. This case is about Defendant's blatant, willful, and deliberate attempts to violate the law through pervasive and ongoing disability discrimination against an employee who had medical disabilities including Diabetes, Carpal Tunnel, and Depression.

3. Plaintiff is a qualified individual with disabilities ("Diabetes, Carpal Tunnel, and

1

Depression") who was unlawfully subjected to continuous, egregious, and disturbingly shocking discrimination on the basis of her disability during her employment and unlawfully terminated from her employment because of her disability and/or in retaliation for her reporting of disability discrimination to other employees and her direct supervisors.

4. Despite Plaintiff's dedicated employment, Defendant repeatedly demeaned, harassed, and humiliated the Plaintiff in an incredibly shocking and abusive manner. Defendant also utterly failed to offer any reasonable accommodation and/or engage in an "interactive process" to determine whether reasonable accommodation was possible. In fact, this refusal to accommodate the Plaintiff led to ghastly and humiliating results as the Plaintiff's diabetes caused a bladder dysfunction which required Plaintiff to urinate more frequently than normal, and when Defendant denied her this reasonable accommodation, Plaintiff was forced to urinate on herself. Instead of engaging in any discussion or "interactive process" to determine whether accommodation was possible, Stock participated in degrading and humiliating the Plaintiff because of her disabilities.

5. Plaintiff reported/complained about the discrimination, and in retaliation for her complaints/reports, Defendant terminated Plaintiff.

6. Defendant unlawfully terminated Plaintiff for complaining/reporting disability discrimination and in retaliation for exercising her right to take legal action because Defendant failed to stop, remediate, correct, prevent, mitigate, and/or otherwise appropriately address the ongoing and continuous disability discrimination.

7. Plaintiff has suffered extreme emotional distress, lost wages, and other significant damages as a direct and proximate result of Defendant's ongoing and continuous disability discrimination, retaliatory treatment, and termination of Plaintiff both due to her disability and her

complaints/reports of disability discrimination.

## PARTIES

    **a.**    **Plaintiff**

8.    Plaintiff, Dina DiNatale, is a resident of Kane County, Illinois who currently resides at 1816 Walnut Street, St. Charles, IL 60174.

9.    Plaintiff DiNatale was an employee of Defendant from approximately October of 1994 through the date of her illegal termination on or about May 21, 2006. At the time of her termination, Plaintiff DiNatale was employed as a cashier.

    **b.**    **Defendant**

10.    Defendant Stock Building Supply, LLC is a domestic corporation doing business throughout Illinois and in all of the states and territories in the United States of America. Defendant is in the business of supplying building materials and construction services to professional home builders and contractors in the United States.

11.    Defendant Stock is engaged in an industry affecting commerce and employs more than fifteen (15) employees and is an employer within the meaning of the ADA, 42 U.S.C. § 12202, 12111(5)(A).

## JURISDICTION AND VENUE

12.    The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332, 1343(3) and (4), 1658, 2201 and 2202. This is a suit authorized and instituted pursuant to the Act of Congress known as the Americans with Disabilities Act of 1990, §2 *et. seq.*, 42 U.S.C.A. §12101, *et. seq.* Supplemental jurisdiction over Plaintiff's Illinois state law claim is conferred by 28 U.S.C, § 1367 (a).

13.    Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §

1391(b), in that defendants employed Plaintiff in the Northern District, Plaintiff resides in the Northern District, and all or a substantial part of the events or omissions giving rise to the claims occurred within the Northern District.  Defendant is subject to personal jurisdiction in the State of Illinois for the purposes of this lawsuit.

## PROCEDURAL HISTORY

14.  Plaintiff fulfilled all conditions precedent to the institution of this action under the ADA.

15.  Plaintiff DiNatale timely filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC"). *Attached hereto as Exhibit "A," and incorporated herein for reference, is a true and correct copy of Plaintiff's EEOC Charge of Discrimination*.

16.  Plaintiff DiNatale received a Notice of Right To Sue—Title VII/ADA dated December 3, 2007, from the EEOC for her Charge of Discrimination (EEOC Charge No. 440-2007-01474). *Attached hereto as Exhibit "B" and incorporated herein for reference, is a true and correct copy of Plaintiff's Notice of Right to Sue from the EEOC*.

17.  Plaintiff DiNatale has timely filed this lawsuit within ninety (90) days of receiving her December 3, 2007 Notice of Right to Sue.

## COMMON ALLEGATIONS

18.  During all relevant times herein, Defendant was an employer as defined by the ADA.

19.  During all relevant times herein, Plaintiff was an employee of Defendant as defined by the ADA.  Plaintiff was employed by Defendant as a cashier.

20. At all relevant times herein, Plaintiff was a qualified, competent, and dedicated employee that contributed to Defendant in a substantial and meaningful manner.

21. At all relevant times herein, Plaintiff was competent to perform, and was performing all of the essential functions of her position as a cashier in a manner that met and/or exceeded Defendant's legitimate business expectations.

22. Plaintiff DiNatale is a qualified individual with disabilities, within the meaning of the ADA. DiNatale suffers from several serious medical conditions, including Diabetes, Carpal Tunnel, and Depression.

23. Plaintiff's disability substantially limited one or more essential life functions that are central to the life process itself, including but not limited to, the following: caring for one's self, performing manual tasks, walking, speaking, breathing, cognitive function, and working.

24. DiNatale fully advised Defendant of the nature and scope of her medical condition. Plaintiff gave Defendant numerous letters from doctors and surgeons diagnosing her as having disabilities.

25. Despite her requests for accommodations, Plaintiff was discriminated against because of her disability and/or retaliated against for complaining about/reporting disability discrimination. The discrimination, harassment, and retaliation included, but was not limited to, the following:

    A. Defendant harassed, humiliated, and degraded Plaintiff about her general medical condition, disabilities, need for accommodation and need for medical treatment/medical leave;

    B. Defendant failed to make "reasonable accommodations" to the known physical limitations, disabilities/handicaps of Plaintiff;

      C.      Defendant refused to engage in an "interactive process" to determine if reasonable accommodation could be made for Plaintiff's disabilities/handicaps;

      D.      Defendant refused to accommodate Plaintiff's need for more frequent bathroom breaks;

      E.      Defendant refused to provide Plaintiff with a headset for answering the phones;

      F.      Defendant terminated Plaintiff because of her disabilities;

      G.      Defendant replaced Plaintiff's position with a non-disabled/non handicapped employee; and

      H.      Defendant otherwise treated Plaintiff differently than non-disabled, non-handicapped employees in the terms, conditions, and responsibilities of her employment.

26. Defendant utterly failed to, despite knowledge of Plaintiff's disability, engage in any evaluation, discussion, or interactive process to determine whether any accommodation was necessary or possible.

27. Defendant refused to consider, evaluate, discuss, investigate, engage in, assess, and/or otherwise attempt to accommodate or determine whether it could accommodate Plaintiff's disability and/or requests for accommodation.

28. Plaintiff complained about the disability-based discrimination and harassment, and Defendant was fully aware of the nature and scope of the disability-based discrimination and harassment. However, Defendant took no action to stop, remediate, investigate or otherwise address the discrimination/harassment.

29. On or about May 21, 2006, Defendant terminated Plaintiff in violation of the ADA.

30. There was no legitimate non-discriminatory/non-retaliatory basis for Plaintiff's termination.

31. Defendant unlawfully terminated Plaintiff from her employment because of her disabilities and/or in retaliation for her complaints/reports regarding the illegal disability discrimination.

32. Plaintiff had an outstanding work history and has never been subjected to disciplinary action. Plaintiff was an excellent, qualified, and dedicated employee.

33. Defendant replaced Plaintiff with a non-disabled individual.

34. Plaintiff has suffered severe damages as a direct and proximate result of Defendant's unlawful conduct as described herein, including, but not limited to, the following: loss of employment, loss of benefits, emotional distress, humiliation, degradation, and other damages.

35. All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law.

## COUNT I

**DISCRIMINATION AND FAILURE TO ACCOMMODATE
IN VIOLATION OF THE ADA
42 U.S.C.A § 12101, et. seq.**

36. Plaintiff re-alleges and restates all preceding paragraphs of this Complaint as if fully set forth herein.

37. All conditions precedent to Count I have been satisfied.

38. Plaintiff is a qualified individual with a disability.

39.     The ADA makes it unlawful to discriminate in the terms, conditions, responsibilities, and/or privileges of employment against a qualified individual with a disability. The ADA further makes it illegal to terminate a qualified individual with a disability because of his disability.

40.     Plaintiff DiNatale is disabled in that she suffers from the following serious medical conditions: Diabetes, Carpal Tunnel, and Depression.

41.     Plaintiff DiNatale became disabled in the course of her employment.  Defendant was fully advised of DiNatale's disability.

42.     Plaintiff DiNatale has a record of her above-described disabilities.

43.     Defendant was aware of Plaintiff DiNatale's disabilities.

44.     Defendant perceived Plaintiff DiNatale as disabled.

45.     At all relevant times herein, Plaintiff DiNatale could perform all of the essential functions of her job and job responsibilities/duties.

46.     At all relevant times herein, Plaintiff DiNatale was qualified, competent, and able to perform all of her job responsibilities/duties.

47.     Plaintiff DiNatale requested reasonable accommodation for her disability. DiNatale requested the need for more bathroom breaks due to her bladder dysfunction and urinary symptoms stemming from her diabetes and had Doctor's notes that corroborated this condition.  Plaintiff also requested a headset for answering the phones due to her Carpal Tunnel and trigger finger and had Doctor's notes that corroborated this condition.

48.     Defendant refused to consider, evaluate, discuss, investigate, assess and/or otherwise attempt to engage in an interactive process to determine whether it could accommodate Plaintiff's disability and/or requests for accommodation.

49. On or about May 21, 2006, Defendant terminated Plaintiff's employment, in whole, or in part, because of her disabilities.

50. Defendant has discriminated against Plaintiff based on her disability by humiliating and degrading her because of her disabilities, terminating the Plaintiff because of her disabilities and hiring a non-disabled individual to perform her job duties and responsibilities.

51. At all relevant times herein, Plaintiff DiNatale informed Stock of the nature and scope of her disabilities..

52. At all relevant times herein, DiNatale was an excellent employee that was performing all of her job functions in an outstanding manner.

53. Stock's above-stated actions were willful, malicious, in bad faith, outrageous, and extraordinary.

54. Stock engaged in the herein-alleged will and malicious violations of the law knowingly and intending to violate federal law.

55. Stock's conduct, in violation of the ADA, was the direct and proximate cause of DiNatale incurring severe damages including, but not limited to, lost wages, lost benefits and severe emotional distress.

## COUNT II

### RETALIATION IN VIOLATION OF THE ADA

### 42 U.S.C.A. § 12101, *et. seq*

56. Plaintiff re-alleges and restates all preceding paragraphs of this Complaint as if fully set forth herein.

57. All conditions precedent to Count II have been satisfied.

58. Plaintiff is a qualified individual with a disability.

59. The ADA makes it unlawful to discriminate in the terms, conditions, responsibilities, and/or privileges of employment against a qualified individual with a disability. The ADA further makes it unlawful to terminate a qualified individual with a disability because of his disability.

60. Plaintiff DiNatale is disabled in that she suffers from the following serious medical conditions: Diabetes, Carpal Tunnel, and Depression.

61. Plaintiff DiNatale became disabled in the course of her employment. Defendant was fully advised of DiNatale's disability.

62. Plaintiff DiNatale has a record of her above-described disabilities.

63. Defendant was aware of Plaintiff DiNatale's disabilities.

64. Defendant perceived Plaintiff DiNatale as disabled.

65. At all relevant times herein, Plaintiff DiNatale could perform all of the essential functions of her job and job responsibilities/duties.

66. At all relevant times herein, Plaintiff DiNatale was qualified, competent, and able to perform all of her job responsibilities/duties.

67. At all relevant times herein, Plaintiff DiNatale informed Defendant of the nature and scope of her disabilities.

68. On May 21, 2006, Defendant terminated Plaintiff's employment, in whole, or in part in retaliation for her requests for reasonable accommodation of her disabilities.

69. There was no legitimate non-discriminatory/non-retaliatory reason for any of the alleged discriminatory acts and/or retaliatory termination of Plaintiff.

70. At all relevant times herein, Plaintiff was an excellent employee that was performing all of her job functions in an outstanding manner.

71. Defendant's above-stated actions were willful, malicious, in bad faith, outrageous, and extraordinary.

72. Defendant engaged in the herein-alleged willful and malicious violations of the law knowingly and intending to violate federal law.

73. Defendant's conduct, in violation of the ADA, was the direct and proximate cause of Plaintiff incurring severe damages including, but not limited to, loss of employment, lost wages, lost benefits and severe emotional distress.

## COUNT III

### HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ADA

### 42 U.S.C.A. § 12101, *et. seq*

74. Plaintiff re-alleges and restates all preceding paragraphs of this Complaint as if fully set forth herein.

75. All conditions precedent to Count III have been satisfied.

76. Plaintiff is a qualified individual with a disability.

77. The ADA makes it unlawful to discriminate in the terms, conditions, responsibilities, and/or privileges of employment against a qualified individual with a disability. The ADA further makes it illegal to terminate a qualified individual with a disability because of his disability.

78. Plaintiff DiNatale is disabled in that she suffers from the following serious medical conditions: Diabetes, Carpal Tunnel, and Depression.

79. Plaintiff DiNatale became disabled in the course of her employment. Defendant was fully advised of DiNatale's disability.

80. Plaintiff DiNatale has a record of her above-described disabilities.

81. Defendant was aware of Plaintiff DiNatale's disabilities.

82. Defendant perceived Plaintiff DiNatale as disabled.

83. At all relevant times herein, Plaintiff DiNatale could perform all of the essential functions of her job and job responsibilities/duties.

84. At all relevant times herein, Plaintiff DiNatale was qualified, competent, and able to perform all of her job responsibilities/duties.

85. At all relevant times herein, Plaintiff DiNatale informed Defendant of the nature and scope of her disabilities.

86. From the date that Defendant first became aware of Plaintiff's disabilities, it began to harass and humiliate Plaintiff. The harassment and humiliation included, but was not limited to, the following:

   A. Defendant harassed, humiliated, and degraded Plaintiff about her general medical condition, disabilities, need for accommodation and need for medical treatment/medical leave;

   B. Defendant failed to make "reasonable accommodations" to the known physical limitations, disabilities/handicaps of Plaintiff;

   C. Defendant refused to engage in an "interactive process" to determine if reasonable accommodation could be made for Plaintiff's disabilities/handicaps;

   D. Defendant refused to accommodate Plaintiff's need for more frequent bathroom breaks;

   E. Defendant refused to provide Plaintiff with a headset for answering the phones;

      F.      Defendant terminated Plaintiff because of her disabilities;

      G.      Defendant replaced Plaintiff's position with a non-disabled/non handicapped employee; and

      H.      Defendant otherwise treated Plaintiff differently than non-disabled, non-handicapped employees in the terms, conditions, and responsibilities of her employment.

87. At all relevant times herein, Plaintiff was an excellent employee that was performing all of her job functions in an outstanding manner.

88. Defendant's above-stated actions were willful, malicious, in bad faith, outrageous, and extraordinary.

89. Defendant engaged in the herein-alleged willful and malicious violations of the law knowingly and intending to violate federal law.

90. Defendant's conduct, in violation of the ADA, was the direct and proximate cause of Plaintiff incurring severe damages including, but not limited to, loss of employment, lost wages, lost benefits and severe emotional distress.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

91. Plaintiff realleges and incorporates by reference all preceding paragraphs, as if fully set forth herein.

92. All conditions precedent to Count IV have been satisfied.

93. Plaintiff was an employee of Defendant.

94. Plaintiff fulfilled her job duties with skill and expertise.

95. Defendant engaged in extreme and outrageous conduct with the intent that the

conduct inflict severe emotional distress upon Plaintiff and with the knowledge that there was a high probability that the conduct would cause severe emotional distress to Plaintiff.

96.  Defendant's severe and outrageous acts, including, but not limited to, the following: repeatedly refusing to allow the Plaintiff to take a bathroom break despite having knowledge of her bladder dysfunction, forcing the Plaintiff to urinate on herself because she wasn't allowed to take a bathroom break, and continuously and repeatedly verbally harassing Plaintiff because of her disabilities, were actions that amounted to extreme and outrageous conduct.

97.  Defendant's acts were perpetrated with the intent to cause Plaintiff severe emotional distress.

98.  Defendant's acts were perpetrated with such recklessness as to cause Plaintiff severe emotional distress.

99.  Plaintiff did, in fact, experience extreme emotional distress.

100.  By the extreme emotional distress Plaintiff was thereby damaged.

101.  Defendant's acts, actions and inaction directly and proximately caused Plaintiff's severe emotional distress.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

i.   Damages sufficient to compensate Plaintiff for her injuries;

ii.  Reinstatement or Front Pay;

iii. Back Pay, inclusive of lost wages and any benefits;

iv.  Pre-judgment and post-judgment interest;

v.   Reasonable attorney's fees;

vi. Costs of this action;

vii. Emotional Distress Damages;

viii. Punitive damages; and,

ix. Any and all other relief that this Honorable Court may deem just and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: February 29, 2008

/s/Robert M. Foote
Robert Foote, Esq. #03214325
Stephen W. Fung #06289522
FOOTE MEYERS MIELKE & FLOWERS, LLC
28 North First St., Suite 2
Geneva, IL 60134
630-232-6333

Kathleen C. Chavez, Esq. #6255735
CHAVEZ LAW FIRM, P.C.
28 North First St., Suite 2
Geneva, IL 60134
630-232-4480

Peter L. Currie #06281711
THE LAW FIRM OF PETER L. CURRIE, PC
536 Wing Lane
Saint Charles, IL 60174
630-862-1130

*Attorneys for the Plaintiffs*