IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DINA DINATALE, | ) Case No. 08 C 1253 |
| | ) |
| Plaintiff, | ) Judge Ruben Castillo |
| | ) Magistrate Judge Nan R. Nolan |
| v. | ) |
| | ) |
| STOCK BUILDING SUPPLY, LLC, | ) |
| | ) |
| Defendant. | ) |

## ANSWER TO COMPLAINT

Defendant Stock Building Supply, LLC ("Stock"), by and through its attorneys, Joan M. Eagle and Patrick T. Stanton of SCHWARTZ COOPER CHARTERED, answers the Complaint as follows:

### NATURE OF CASE

1. Plaintiff, Dina DiNatale, brings this four (4) Count Complaint against Defendant Stock Building Supply seeking damages for Defendant's egregious disability discrimination, failure to accommodate, harassment, unlawful termination, hostile work environment and other related unlawful conduct constituting violations of the Americans with Disabilities Act of 1990, §2 et. seq., 42 U.S.C.A. §12101, et. seq. ("ADA"), and the Intentional Infliction of Emotional Distress.

**ANSWER:** Stock admits that Plaintiff has brought the captioned four-count Complaint and denies that it discriminated against or unlawfully terminated Plaintiff's employment or caused intentional infliction of emotional distress.

2. This case is about Defendant's blatant, willful, and deliberate attempts to violate the law through pervasive and ongoing disability discrimination against an employee who had medical disabilities including Diabetes, Carpal Tunnel, and Depression.

**ANSWER:** Stock denies the allegations contained in Paragraph 2 of the Complaint.

3. Plaintiff is a qualified individual with disabilities ("Diabetes, Carpal Tunnel, and Depression") who was unlawfully subjected to continuous, egregious, and disturbingly shocking discrimination on the basis of her disability during her

employment and unlawfully terminated from her employment because of her disability and/or in retaliation for her reporting of disability discrimination to other employees and her direct supervisors.

**ANSWER:**   Stock denies the allegations contained in Paragraph 3 of the Complaint.

4. Despite Plaintiffs dedicated employment, Defendant repeatedly demeaned, harassed, and humiliated the Plaintiff in an incredibly shocking and abusive manner. Defendant also utterly failed to offer any reasonable accommodation and/or engage in an "interactive process" to determine whether reasonable accommodation was possible. In fact, this refusal to accommodate the Plaintiff led to ghastly and humiliating results as the Plaintiff's diabetes caused a bladder dysfunction which required Plaintiff to urinate more frequently than normal, and when Defendant denied her this reasonable accommodation, Plaintiff was forced to urinate on herself. Instead of engaging in any discussion or "interactive process" to determine whether accommodation was possible, Stock participated in degrading and humiliating the Plaintiff because of her disabilities.

**ANSWER:**   Stock denies the allegations contained in Paragraph 4 of the Complaint.

5. Plaintiff reported/complained about the discrimination, and in retaliation for her complaints/reports, Defendant terminated Plaintiff.

**ANSWER:**   Stock denies the allegations contained in Paragraph 5 of the Complaint.

6. Defendant unlawfully terminated Plaintiff for complaining/reporting disability discrimination and in retaliation for exercising her right to take legal action because Defendant failed to stop, remediate, correct, prevent, mitigate, and/or otherwise appropriately address the ongoing and continuous disability discrimination.

**ANSWER:**   Stock denies the allegations contained in Paragraph 6 of the Complaint.

7. Plaintiff has suffered extreme emotional distress, lost wages, and other significant damages as a direct and proximate result of Defendant's ongoing and continuous disability discrimination, retaliatory treatment, and termination of Plaintiff both due to her disability and her complaints/reports of disability discrimination.

**ANSWER:**   Stock denies the allegations contained in Paragraph 7 of the Complaint.

## PARTIES

a. **Plaintiff**

8. Plaintiff, Dina DiNatale, is a resident of Kane County, Illinois who currently resides at 1816 Walnut Street, St. Charles, IL 60174.

**ANSWER:** Stock is without knowledge or information as to the truth of where Plaintiff currently resides and admits that she resided at 1816 Walnut Street, St. Charles, IL, for the slightly over six months she worked for Stock in 2005-2006.

9. Plaintiff DiNatale was an employee of Defendant from approximately October of 1994 through the date of her illegal termination on or about May 21, 2006. At the time of her termination, Plaintiff DiNatale was employed as a cashier.

**ANSWER:** Stock admits that Plaintiff was employed as a cashier on May 21, 2006, and denies the remaining allegations contained in Paragraph 9 of the Complaint. Further answering, Stock states that Plaintiff became a Stock employee on November 11, 2005, and was temporarily laid off on May 21, 2006.

b. **Defendant**

10. Defendant Stock Building Supply, LLC is a domestic corporation doing business throughout Illinois and in all of the states and territories in the United States of America. Defendant is in the business of supplying building materials and construction services to professional home builders and contractors in the United States.

**ANSWER:** Stock admits that it is in the business of supplying building materials to professional home builders in the United States and denies the remaining allegations contained in Paragraph 10 of the Complaint.

11. Defendant Stock is engaged in an industry affecting commerce and employs more than fifteen (15) employees and is an employer within the meaning of the ADA, 42 U.S.C. §12202, 12111(5)(A).

**ANSWER:** Stock admits the allegations contained in Paragraph 11 of the Complaint and denies it violated the Americans With Disabilities Act.

## JURISDICTION AND VENUE

12. The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1332, 1343(3) and (4), 1658, 2201 and 2202. This is a suit authorized and instituted pursuant to the Act of Congress known as the Americans with

Disabilities Act of 1990, §2 et. seq., 42 U.S.C.A. § 12101, et. seq. Supplemental jurisdiction over Plaintiffs Illinois state law claim is conferred by 28 U.S.C. § 1367 (a).

**ANSWER:** Stock admits that subject matter jurisdiction of this court is appropriate under 28 U.S.C. §1331, 1658 and 42 U.S.C. §12101 *et seq.* and that supplemental jurisdiction under state law is conferred by 28 U.S.C. §1367(a). Stock denies the remaining allegations contained in paragraph 12 of the Complaint. Stock further denies that it violated the Americans With Disabilities Act.

13. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b), in that defendants employed Plaintiff in the Northern District, Plaintiff resides in the Northern District, and all or a substantial part of the events or omissions giving rise to the claims occurred within the Northern District. Defendant is subject to personal jurisdiction in the State of Illinois for the purposes of this lawsuit.

**ANSWER:** Stock admits the allegations contained in Paragraph 13 of the Complaint.

## PROCEDURAL HISTORY

14. Plaintiff fulfilled all conditions precedent to the institution of this action under the ADA.

**ANSWER:** Stock admits the allegations contained in Paragraph 14 of the Complaint.

15. Plaintiff DiNatale timely filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto as Exhibit "A," and incorporated herein for reference, is a true and correct copy of Plaintiff's EEOC Charge of Discrimination.

**ANSWER:** Stock admits the allegations contained in Paragraph 15 of the Complaint.

16. Plaintiff DiNatale received a Notice of Right To Sue-Title VII/ADA dated December 3, 2007, from the EEOC for her Charge of Discrimination (EEOC Charge No. 440 2007-01474). Attached hereto as Exhibit "B" and incorporated herein for reference, is a true and correct copy of Plaintiff's Notice of Right to Sue from the EEOC.

**ANSWER:** Stock admits the allegations contained in Paragraph 16 of the Complaint.

17. Plaintiff DiNatale has timely filed this lawsuit within ninety (90) days of receiving her December 3, 2007 Notice of Right to Sue.

**ANSWER:** Stock admits the allegations contained in Paragraph 17 of the Complaint.

## COMMON ALLEGATIONS

18. During all relevant times herein, Defendant was an employer as defined by the ADA.

**ANSWER:** Stock admits the allegations contained in Paragraph 18 of the Complaint.

19. During all relevant times herein, Plaintiff was an employee of Defendant as defined by the ADA. Plaintiff was employed by Defendant as a cashier.

**ANSWER:** Stock admits that it employed Plaintiff as a cashier and denies the remaining allegations contained in Paragraph 19 of the Complaint.

20. At all relevant times herein, Plaintiff was a qualified, competent, and dedicated employee that [sic] contributed to Defendant in a substantial and meaningful manner.

**ANSWER:** Stock denies the allegations contained in Paragraph 20 of the Complaint.

21. At all relevant times herein, Plaintiff was competent to perform, and was performing all of the essential functions of her position as a cashier in a manner that met and/or exceeded Defendant's legitimate business expectations.

**ANSWER:** Stock denies the allegations contained in Paragraph 21 of the Complaint.

22. Plaintiff DiNatale is a qualified individual with disabilities, within the meaning of the ADA. DiNatale suffers from several serious medical conditions, including Diabetes, Carpal Tunnel, and Depression.

**ANSWER:** Stock denies that Plaintiff was disabled within the meaning of the ADA and admits that Plaintiff had diabetes and, prior to becoming employed by Stock, had had surgery for Carpal Tunnel Syndrome. Stock denies the remaining allegations contained in Paragraph 22 of the Complaint.

23. Plaintiffs disability substantially limited one or more essential life functions that are central to the life process itself, including but not limited to, the following: caring for one's self, performing manual tasks, walking, speaking, breathing, cognitive function, and working.

**ANSWER:** Stock denies the allegations contained in Paragraph 23 of the Complaint.

24. DiNatale fully advised Defendant of the nature and scope of her medical condition. Plaintiff gave Defendant numerous letters from doctors and surgeons diagnosing her as having disabilities.

**ANSWER:** Stock admits that Plaintiff gave it letters from doctors stating that she had diabetes and "wrist pain" and denies the remaining allegations contained in Paragraph 24 of the Complaint.

25. Despite her requests for accommodations, Plaintiff was discriminated against because of her disability and/or retaliated against for complaining about/reporting disability discrimination. The discrimination, harassment, and retaliation included, but was not limited to, the following:

   A. Defendant harassed, humiliated, and degraded Plaintiff about her general medical condition, disabilities, need for accommodation and need for medical treatment/medical leave;

   B. Defendant failed to make "reasonable accommodations" to the known physical limitations, disabilities/handicaps of Plaintiff;

   C. Defendant refused to engage in an "interactive process" to determine if reasonable accommodation could be made for Plaintiffs disabilities/handicaps;

   D. Defendant refused to accommodate Plaintiff's need for more frequent bathroom breaks;

   E. Defendant refused to provide Plaintiff with a headset for answering the phones;

   F. Defendant terminated Plaintiff because of her disabilities;

   G. Defendant replaced Plaintiff's position with a non-disabled/non handicapped employee; and

   H. Defendant otherwise treated Plaintiff differently than non-disabled, non handicapped employees in the terms, conditions, and responsibilities of her employment.

**ANSWER:** Stock denies each and every allegation contained in Paragraph 25 of the Complaint.

26. Defendant utterly failed to, despite knowledge of Plaintiffs disability, engage in any evaluation, discussion, or interactive process to determine whether any accommodation was necessary or possible.

**ANSWER:** Stock denies Plaintiff was disabled within the meaning of the ADA and further denies the remaining allegations contained in Paragraph 26 of the Complaint.

27. Defendant refused to consider, evaluate, discuss, investigate, engage in, assess, and/or otherwise attempt to accommodate or determine whether it could accommodate Plaintiffs disability and/or requests for accommodation.

**ANSWER:** Stock denies the allegations contained in Paragraph 27 of the Complaint.

28. Plaintiff complained about the disability-based discrimination and harassment, and Defendant was fully aware of the nature and scope of the disability-based discrimination and harassment. However, Defendant took no action to stop, remediate, investigate or otherwise address the discrimination/harassment.

**ANSWER:** Stock denies the allegations contained in sentence 1, Paragraph 28, of the Complaint and, therefore, could not have taken action as suggested in sentence 2.

29. On or about May 21, 2006, Defendant terminated Plaintiff in violation of the ADA.

**ANSWER:** Stock denies the allegations contained in Paragraph 29 of the Complaint. Further answering, Stock states that Plaintiff was laid off, along with other employees, due to a downturn in business, Plaintiff was expressly told the layoff was expected to last between one week and one month, at which time she would be recalled, and Plaintiff failed to respond to two telephone calls and two recall notices commencing one month later.

30. There was no legitimate non-discriminatory/non-retaliatory basis for Plaintiffs [sic] termination.

**ANSWER:** Stock denies that Plaintiff was terminated and thus denies the allegations contained in Paragraph 30 of the Complaint.

31. Defendant unlawfully terminated Plaintiff from her employment because of her disabilities and/or in retaliation for her complaints/reports regarding the illegal disability discrimination.

**ANSWER:** Stock denies that it terminated Plaintiff and thus denies the allegations contained in Paragraph 31 of the Complaint.

32. Plaintiff had an outstanding work history and has never been subjected to disciplinary action. Plaintiff was an excellent, qualified, and dedicated employee.

**ANSWER:** Stock denies the allegations contained in Paragraph 32 of the Complaint.

33. Defendant replaced Plaintiff with a non-disabled individual.

**ANSWER:** Stock denies that Plaintiff's replacement was non-disabled. Further answering, Stock states that it only replaced Plaintiff after she failed to respond to two telephone calls and two recall letters commencing one month after her layoff and, therefore, pursuant to Stock policy, she was deemed to have voluntarily resigned.

34. Plaintiff has suffered severe damages as a direct and proximate result of Defendant's unlawful conduct as described herein, including, but not limited to, the following: loss of employment, loss of benefits, emotional distress, humiliation, degradation, and other damages.

**ANSWER:** Stock denies the allegations contained in paragraph 34 of the Complaint.

35. All allegations and claims alleged herein should be read in the alternative, to the extent such an interpretation is necessitated by law.

**ANSWER:** Paragraph 35 of the Complaint does not require response.

## COUNT I
## DISCRIMINATION AND FAILURE TO ACCOMMODATE
## IN VIOLATION OF THE ADA 42 U.S.C.A. § 12101, ET. SEQ.

36. Plaintiff re-alleges and restates all preceding paragraphs of this Complaint as if fully set forth herein.

**ANSWER:** Stock realleges and restates its Answers to Paragraphs 1-35 as if fully set forth herein.

37. All conditions precedent to Count 1 have been satisfied.

**ANSWER:** Stock admits the allegations contained in Paragraph 37 of the Complaint.

38. Plaintiff is a qualified individual with a disability.

**ANSWER:** Stock denies the allegations contained in Paragraph 38 of the Complaint.

39. The ADA makes it unlawful to discriminate in the terms, conditions, responsibilities, and/or privileges of employment against a qualified individual with a disability. The ADA further makes it illegal to terminate a qualified individual with a disability because of his disability.

**ANSWER:** Stock admits that Plaintiff's summary of ADA prohibitions is accurate. Stock denies that it violated the ADA.

40. Plaintiff DiNatale is disabled in that she suffers from the following serious medical conditions: Diabetes, Carpal Tunnel, and Depression.

**ANSWER:** Stock admits that Plaintiff has diabetes and denies the remaining allegations contained in Paragraph 40 of the Complaint.

41. Plaintiff DiNatale became disabled in the course of her employment. Defendant was fully advised of DiNatale's disability.

**ANSWER:** Stock denies the allegations contained in Paragraph 41 of the Complaint.

42. Plaintiff DiNatale has a record of her above-described disabilities.

**ANSWER:** Stock admits that Plaintiff has a record of having diabetes and "wrist pain" and denies the remaining allegations contained in Paragraph 42 of the Complaint.

43. Defendant was aware of Plaintiff DiNatale's disabilities.

**ANSWER:** Stock admits being aware that Plaintiff had diabetes and denies the remaining allegations contained in Paragraph 43 of the Complaint.

44. Defendant perceived Plaintiff DiNatale as disabled.

**ANSWER:** Stock denies the allegations contained in Paragraph 44 of the Complaint.

45. At all relevant times herein, Plaintiff DiNatale could perform all of the essential functions of her job and job responsibilities/duties.

**ANSWER:** Stock denies the allegations contained in Paragraph 45 of the Complaint.

46. At all relevant times herein, Plaintiff DiNatale was qualified, competent, and able to perform all of her job responsibilities/duties.

**ANSWER:** Stock denies the allegations contained in Paragraph 46 of the Complaint.

47. Plaintiff DiNatale requested reasonable accommodation for her disability. DiNatale requested the need for more bathroom breaks due to her bladder dysfunction and urinary symptoms stemming from her diabetes and had Doctor's notes that corroborated this condition. Plaintiff also requested a headset for answering the phones due to her Carpal Tunnel and trigger finger and had Doctor's notes that corroborated this condition.

**ANSWER:** Stock denies that Plaintiff was disabled as that term is described in the ADA, admits that Plaintiff's doctor requested that she be given more bathroom breaks due to bladder dysfunction, and denies that the doctor said her bladder dysfunction was due to diabetes. Stock admits that Plaintiff requested a headset and denies the remaining allegations contained in Paragraph 47 of the Complaint.

48. Defendant refused to consider, evaluate, discuss, investigate, assess and/or otherwise attempt to engage in an interactive process to determine whether it could accommodate Plaintiff's disability and/or requests for accommodation.

**ANSWER:** Stock denies the allegations contained in Paragraph 48 of the Complaint.

49. On or about May 21, 2006, Defendant terminated Plaintiffs employment, in whole, or in part, because of her disabilities.

**ANSWER:** Stock denies the allegations contained in Paragraph 49 of the Complaint. Further answering, Stock states that Plaintiff was laid off, along with other employees, due to a downturn in business, Plaintiff was expressly told the layoff was expected to last between one week and one month, at which time she would be recalled, and Plaintiff failed to respond to two telephone calls and two recall notices commencing one month later.

50. Defendant has discriminated against Plaintiff based on her disability by humiliating and degrading her because of her disabilities, terminating the Plaintiff because of her disabilities and hiring a non-disabled individual to perform her job duties and responsibilities.

**ANSWER:** Stock denies the allegations contained in Paragraph 50 of the Complaint.

51. At all relevant times herein, Plaintiff DiNatale informed Stock of the nature and scope of her disabilities..

**ANSWER:** Stock denies the allegations contained in Paragraph 51 of the Complaint.

52. At all relevant times herein, DiNatale was an excellent employee that [sic] was performing all of her job functions in an outstanding manner.

**ANSWER:** Stock denies the allegations contained in Paragraph 52 of the Complaint.

53. Stock's above-stated actions were willful, malicious, in bad faith, outrageous, and extraordinary.

**ANSWER:** Stock denies the allegations contained in Paragraph 53 of the Complaint.

54. Stock engaged in the herein-alleged will and malicious violations of the law knowingly and intending to violate federal law.

**ANSWER:** Stock denies the allegations contained in Paragraph 54 of the Complaint.

55. Stock's conduct, in violation of the ADA, was the direct and proximate cause of DiNatale incurring severe damages including, but not limited to, lost wages, lost benefits and severe emotional distress.

**ANSWER:** Stock denies the allegations contained in Paragraph 55 of the Complaint.

**COUNT II**
**RETALIATION IN VIOLATION OF THE ADA**
**42 U.S.C.A. § 12101. ET. SEQ**

56. Plaintiff re-alleges and restates all preceding paragraphs of this Complaint as if fully set forth herein.

**ANSWER:** Stock realleges and restates its answers to Paragraphs 1 – 55 as if fully set forth herein.

57. All conditions precedent to Count II have been satisfied.

**ANSWER:** Stock admits the allegations contained in Paragraph 57 of the Complaint.

58. Plaintiff is a qualified individual with a disability.

**ANSWER:** Stock denies the allegations contained in Paragraph 58 of the Complaint.

59. The ADA makes it unlawful to discriminate in the terms, conditions, responsibilities, and/or privileges of employment against a qualified individual with a disability. The ADA further makes it unlawful to terminate a qualified individual with a disability because of his disability.

  **ANSWER:** Stock admits that Plaintiff's summary of ADA prohibitions is accurate. Stock denies that it violated the ADA.

  60. Plaintiff DiNatale is disabled in that she suffers from the following serious medical conditions: Diabetes, Carpal Tunnel, and Depression.

  **ANSWER:** Stock admits that Plaintiff has diabetes and denies the remaining allegations contained in Paragraph 60 of the Complaint.

  61. Plaintiff DiNatale became disabled in the course of her employment. Defendant was fully advised of DiNatale's disability.

  **ANSWER:** Stock denies the allegations contained in Paragraph 61 of the Complaint.

  62. Plaintiff DiNatale has a record of her above-described disabilities.

  **ANSWER:** Stock admits that Plaintiff has a record of having diabetes and denies the remaining allegations contained in Paragraph 62 of the Complaint.

  63. Defendant was aware of Plaintiff DiNatale's disabilities.

  **ANSWER:** Stock admits being aware that Plaintiff had diabetes and "wrist pain" and denies the remaining allegations contained in Paragraph 63 of the Complaint.

  64. Defendant perceived Plaintiff DiNatale as disabled.

  **ANSWER:** Stock denies the allegations contained in Paragraph 64 of the Complaint.

  65. At all relevant times herein, Plaintiff DiNatale could perform all of the essential functions of her job and job responsibilities/duties.

  **ANSWER:** Stock denies the allegations contained in Paragraph 65 of the Complaint.

  66. At all relevant times herein, Plaintiff DiNatale was qualified, competent, and able to perform all of her job responsibilities/duties.

  **ANSWER:** Stock denies the allegations contained in Paragraph 66 of the Complaint.

  67. At all relevant times herein, Plaintiff DiNatale informed Defendant of the nature and scope of her disabilities.

**ANSWER:** Stock admits being informed that Plaintiff had diabetes and "wrist pain" and denies the remaining allegations contained in Paragraph 67 of the Complaint.

68. On May 21, 2006, Defendant terminated Plaintiff's employment, in whole, or in part in retaliation for her requests for reasonable accommodation of her disabilities.

**ANSWER:** Stock denies the allegations contained in Paragraph 68 of the Complaint. Further answering, Stock states that Plaintiff was laid off, along with other employees, due to a downturn in business, Plaintiff was expressly told the layoff was expected to last between one week and one month, at which time she would be recalled, and Plaintiff failed to respond to two telephone calls and two recall notices commencing one month later.

69. There was no legitimate non-discriminatory/non-retaliatory reason for any of the alleged discriminatory acts and/or retaliatory termination of Plaintiff.

**ANSWER:** Stock denies that Plaintiff was terminated and thus denies the allegations contained in Paragraph 69 of the Complaint.

70. At all relevant times herein, Plaintiff was an excellent employee that [sic] was performing all of her job functions in an outstanding manner.

**ANSWER:** Stock denies the allegations contained in Paragraph 70 of the Complaint.

71. Defendant's above-stated actions were willful, malicious, in bad faith, outrageous, and extraordinary.

**ANSWER:** Stock denies the allegations contained in Paragraph 71 of the Complaint.

72. Defendant engaged in the herein-alleged willful and malicious violations of the law knowingly and intending to violate federal law.

**ANSWER:** Stock denies the allegations contained in Paragraph 72 of the Complaint.

73. Defendant's conduct, in violation of the ADA, was the direct and proximate cause of Plaintiff incurring severe damages including, but not limited to, loss of employment, lost wages, lost benefits and severe emotional distress.

**ANSWER:** Stock denies the allegations contained in Paragraph 73 of the Complaint.

# COUNT III
## HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE ADA 42 U.S.C.A. § 12101. ET. SEQ

74. Plaintiff re-alleges and restates all preceding paragraphs of this Complaint as if fully set forth herein.

**ANSWER:** Stock realleges and restates its answers to Paragraphs 1-73 as if fully set forth herein.

75. All conditions precedent to Count III have been satisfied.

**ANSWER:** Stock admits the allegations contained in Paragraph 75 of the Complaint.

76. Plaintiff is a qualified individual with a disability.

**ANSWER:** Stock denies the allegations contained in Paragraph 76 of the Complaint.

77. The ADA makes it unlawful to discriminate in the terms, conditions, responsibilities, and/or privileges of employment against a qualified individual with a disability. The ADA further makes it illegal to terminate a qualified individual with a disability because of his disability.

**ANSWER:** Stock admits that Plaintiff's summary of ADA prohibitions is accurate. Stock denies that it violated the ADA.

78. Plaintiff DiNatale is disabled in that she suffers from the following serious medical conditions: Diabetes, Carpal Tunnel, and Depression.

**ANSWER:** Stock admits that Plaintiff has diabetes and "wrist pain" and denies the remaining allegations contained in Paragraph 78 of the Complaint.

79. Plaintiff DiNatale became disabled in the course of her employment. Defendant was fully advised of DiNatale's disability.

**ANSWER:** Stock denies the allegations contained in Paragraph 79 of the Complaint.

80. Plaintiff DiNatale has a record of her above-described disabilities.

**ANSWER:** Stock admits that Plaintiff has a record of having diabetes and "wrist pain" and denies the remaining allegations contained in Paragraph 80 of the Complaint.

81.  Defendant was aware of Plaintiff DiNatale's disabilities.

**ANSWER:** Stock admits being aware that Plaintiff had diabetes and "wrist pain" and denies the remaining allegations contained in Paragraph 81 of the Complaint.

82.  Defendant perceived Plaintiff DiNatale as disabled.

**ANSWER:** Stock denies the allegations contained in Paragraph 82 of the Complaint.

83.  At all relevant times herein, Plaintiff DiNatale could perform all of the essential functions of her job and job responsibilities/duties.

**ANSWER:** Stock denies the allegations contained in Paragraph 83 of the Complaint.

84.  At all relevant times herein, Plaintiff DiNatale was qualified, competent, and able to perform all of her job responsibilities/duties.

**ANSWER:** Stock denies the allegations contained in Paragraph 84 of the Complaint.

85.  At all relevant times herein, Plaintiff DiNatale informed Defendant of the nature and scope of her disabilities.

**ANSWER:** Stock admits being informed that the Plaintiff had diabetes and "wrist pain" and denies the remaining allegations contained in Paragraph 85 of the Complaint.

86.  From the date that Defendant first became aware of Plaintiffs disabilities, it began to harass and humiliate Plaintiff. The harassment and humiliation included, but was not limited to, the following:

   A.  Defendant harassed, humiliated, and degraded Plaintiff about her general medical condition, disabilities, need for accommodation and need for medical treatment/medical leave;

   B.  Defendant failed to make "reasonable accommodations" to the known physical limitations, disabilities/handicaps of Plaintiff;

   C.  Defendant refused to engage in an "interactive process" to determine if reasonable accommodation could be made for Plaintiff's disabilities/handicaps;

   D.  Defendant refused to accommodate Plaintiff's need for more frequent bathroom breaks;

   E.  Defendant refused to provide Plaintiff with a headset for answering the phones;

   F.  Defendant terminated Plaintiff because of her disabilities;

    G.    Defendant replaced Plaintiffs position with a non-disabled/non handicapped employee; and

    H.    Defendant otherwise treated Plaintiff differently than non-disabled, non handicapped employees in the terms, conditions, and responsibilities of her employment.

**ANSWER:** Stock denies each and every allegation contained in Paragraph 86 of the Complaint.

87.    At all relevant times herein, Plaintiff was an excellent employee that [sic] was performing all of her job functions in an outstanding manner.

**ANSWER:** Stock denies the allegations contained in Paragraph 87 of the Complaint.

88.    Defendant's above-stated actions were willful, malicious, in bad faith, outrageous, and extraordinary.

**ANSWER:** Stock denies the allegations contained in Paragraph 88 of the Complaint.

89.    Defendant engaged in the herein-alleged willful and malicious violations of the law knowingly and intending to violate federal law.

**ANSWER:** Stock denies the allegations contained in Paragraph 89 of the Complaint.

90.    Defendant's conduct, in violation of the ADA, was the direct and proximate cause of Plaintiff incurring severe damages including, but not limited to, loss of employment, lost wages, lost benefits and severe emotional distress.

**ANSWER:** Stock denies the allegations contained in Paragraph 90 of the Complaint.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

91.    Plaintiff realleges and incorporates by reference all preceding paragraphs, as if fully set forth herein.

**ANSWER:** Stock realleges and restates its answers to Paragraph 1-90 as if fully set forth herein.

92.    All conditions precedent to Count IV have been satisfied.

**ANSWER:** Stock is without knowledge or information as to what conditions precedent are required to maintain Count IV of the Complaint and thus denies same.

93.    Plaintiff was an employee of Defendant.

**ANSWER:** Stock admits the allegations contained in Paragraph 93 of the Complaint. Further answering, Stock states that Plaintiff was an employee of it from November 11, 2005, until she failed to respond to recall notices in June of 2006.

94. Plaintiff fulfilled her job duties with skill and expertise.

**ANSWER:** Stock denies the allegations contained in Paragraph 94 of the Complaint.

95. Defendant engaged in extreme and outrageous conduct with the intent that the conduct inflict severe emotional distress upon Plaintiff and with the knowledge that there was a high. probability that the conduct would cause severe emotional distress to Plaintiff.

**ANSWER:** Stock denies the allegations contained in Paragraph 95 of the Complaint.

96. Defendant's severe and outrageous acts, including, but not limited to, the following: repeatedly refusing to allow the Plaintiff to take a bathroom break despite having knowledge of her bladder dysfunction, forcing the Plaintiff to urinate on herself because she wasn't allowed to take a bathroom break, and continuously and repeatedly verbally harassing Plaintiff because of her disabilities, were actions that amounted to extreme and outrageous conduct.

**ANSWER:** Stock denies the allegations contained in Paragraph 96 of the Complaint.

97. Defendant's acts were perpetrated with the intent to cause Plaintiff severe emotional distress.

**ANSWER:** Stock denies the allegations contained in Paragraph 97 of the Complaint.

98. Defendant's acts were perpetrated with such recklessness as to cause Plaintiff severe emotional distress.

**ANSWER:** Stock denies the allegations contained in Paragraph 98 of the Complaint.

99. Plaintiff did, in fact, experience extreme emotional distress.

**ANSWER:** Stock denies the allegations contained in Paragraph 99 of the Complaint.

100. By the extreme emotional distress Plaintiff was thereby damaged.

**ANSWER:** Stock denies the allegations contained in Paragraph 100 of the Complaint.

101. Defendant's acts, actions and inaction directly and proximately caused Plaintiffs severe emotional distress.

**ANSWER:** Stock denies the allegations contained in Paragraph 101 of the Complaint.

## **AFFIRMATIVE DEFENSES**

1. Plaintiff failed to inform Stock's Human Resources Department that she believed she was being discriminated against or harassed due to alleged disabilities, as she was required to do pursuant to Stock's policy, of which she was aware.

2. Plaintiff failed to respond to two calls and two letters in June 2006 advising her that she was being recalled from layoff; thus, Plaintiff was deemed to have voluntarily resigned pursuant to Stock's policy, of which she was aware, and no damages are available to her after July 2, 2000.

3. Plaintiff's position ceased to exist as of November 17, 2006; thus, no damages are available to her after November 17, 2006.

STOCK BUILDING SUPPLY, LLC

s/ *Joan M. Eagle*
Joan M. Eagle, One of its Attorneys

Joan M. Eagle, Esq.
Patrick T. Stanton, Esq.
Attorneys for Stock Building Supply, LLC
SCHWARTZ COOPER CHARTERED
180 North LaSalle Street, Suite 2700
Chicago, IL 60601
(312) 845-5439 (phone)
(312) 264-2433 (fax)